THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| SHIBUMI SHADE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 5:21-cv-256 |
| | ) | |
| v. | ) | |
| | ) | **REPLY IN SUPPORT OF SHIBUMI** |
| BEACH SHADE LLC, and | ) | **SHADE INC.'S MOTION FOR** |
| MATTHEW FINNERAN | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| Defendants. | ) | |

Plaintiff Shibumi Shade, Inc. ("Shibumi") submits this reply to Defendants Beach Shade LLC and Matthew Finneran's (collectively "BSL") opposition brief (Dkt. 22).

## I. INTRODUCTION

BSL's infringement of Shibumi's intellectual property rights is clear. On the asserted patents, BSL sidesteps invalidity and instead offers constructions for claim terms that are inconsistent with the ordinary meaning, but BSL infringes the asserted claims literally and under the doctrine of equivalents even accepting its strained claim constructions. Shibumi is separately entitled to injunctive relief based on its trade dress claims. BSL's opposition improperly analyzes whether individual features of the products are described in corresponding patents instead of viewing Shibumi's trade dress as a whole. Viewed through the appropriate lens, the Shibumi Shade overall design is distinctive and protectable, was intentionally copied by BSL, and is likely to confuse (and has actually confused) consumers in the marketplace.

The Court is not faced with an innocent infringer or a typical competitor—BSL has willfully copied Shibumi's distinctive design and patented product to, in Mr. Finneran's own words, "get a seat at the table" with Shibumi. The striking similarity between Shibumi's and BSL's products, combined with the highly distinctive nature of Shibumi's design and BSL's stated intent to copy, can only lead to one conclusion: BSL infringes Shibumi's two issued patents and its trade dress, and Shibumi is entitled to a preliminary injunction.

## II. ARGUMENT

### A. Shibumi Is Likely to Succeed On at Least One of Its Infringement Claims and Is Therefore Entitled to Injunctive Relief.

#### 1. BSL literally infringes the '330 and '117 Patents.

Because BSL has not put forth any evidence of invalidity, Shibumi need only demonstrate BSL likely infringes either the '330 Patent or the '117 Patent.

1

### a. The '330 Patent

BSL first applies an incorrect construction and argues that the Beach Shade does not have a "single, continuous frame." Dkt. 22 at 13-15. As set forth in Shibumi's contemporaneous claim construction briefing, BSL's proposed construction departs from the plain and ordinary meaning of the terms "single" and "continuous frame" and should therefore be rejected. The Beach Shade employs a plurality of sections—or "two poles" as BSL describes them (*id.* at 14)—that are joined in an end-to-end alignment from a left end to a right end, wherein each section (or "pole") is configured to engage with any adjacent section. BSL's product infringes even under its own construction because the adjacent poles are joined in an end-to-end alignment via the center connector, thereby forming an "uninterrupted" or "undivided" singular frame. Second, BSL incorrectly claims that its product's cord does not attach to the "true interior" of the carrying bag and therefore does not infringe. Dkt. 22 at 11-13. But the '330 Patent describes the "exterior" and "interior" of the container as dynamic positions that are interchangeable upon inversion. BSL acknowledges that its product has a connection loop on the exterior of its invertible bag that connects to the tension cord. Dkt. 22 at 12-13. Inversion of BSL's bag results in the connection loop being on the interior of the bag, so BSL infringes the '330 Patent.

### b. The '117 Patent

BSL's construction improperly limits the claimed cable to extending through the plurality of sections "without interruption," but that concept is not found anywhere in the '117 Patent. Dkt. 22 at 15. Under the plain and ordinary meaning set forth in the '117 Patent and Shibumi's contemporaneous claim construction briefing, the cables in the Beach Shade run through each of the two collapsible poles and meet at the molded fitting or center connector arranged between the two collapsible poles to provide support for the end-to-end alignment of the plurality of sections

of the frame. The Beach Shade infringes Claim 1 of the '117 Patent under BSL's proposed construction because there is no space between the collapsible poles and the center connector that joins the plurality of sections together. So the cable extends through the plurality of sections of the frame "without interruption." *See also* Dkt. 4 at 9; Dkt. 4-8 at 7-8.

### 2. BSL infringes the Asserted Patents under the doctrine of equivalents.

In addition to its literal infringement, the Beach Shade "perform[s] substantially the same function in substantially the same way to obtain the same result" as the Shibumi and therefore infringes under the doctrine of equivalents. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.,* 914 F.3d 1347, 1362 (Fed. Cir. 2019). The Beach Shade uses a singular frame with pole segments secured to one another in an end-to-end alignment and to a surface, a canopy attached to a frame only on one side, and a cord extending from the center of the frame to an anchor.

To escape the doctrine of equivalents, BSL raises prosecution history estoppel, which applies only if (1) the patentee filed a narrowing amendment during prosecution; (2) the reason for the narrowing amendment was "a substantial one relating to patentability", <u>and</u> (3) the subject matter surrendered by the narrowing amendment includes the particular equivalent at issue. *See Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). BSL does not explain how the amendments were made for a reason "relating to patentability" or how the subject matter allegedly surrendered includes the Beach Shade equivalents. Thus, prosecution history estoppel does not apply, and BSL infringes.

### 3. BSL's intentional and nearly identical copy of Shibumi's highly distinctive product design infringes Shibumi's protectable trade dress.

#### a. <u>Shibumi's overall design is not functional.</u>

BSL improperly segregates out individual "functional" elements of Shibumi's overall design and then concludes that Shibumi's overall design must be purely functional as well. Dkt.

3

22 at 18-19. It is well-settled, however, that "[a] defendant cannot avoid liability for infringing a trade dress by segregating out individual elements of the trade dress . . . and arguing that no one of these is valid and protectable in and of itself . . . . This has been the rule for close to a century." *McCarthy on Trademarks and Unfair Competition* § 8.2 (5th ed. 2019).

Shibumi's claimed trade dress must be considered as a whole, as it is the "total image and overall appearance" of the trade dress <u>as defined by the plaintiff</u> that is at issue. *Camco Mfg.* 391 F. Supp. 3d at 521 (M.D.N.C. 2019) (emphasis added). In *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654 (4th Cir. 1996), for example, the Fourth Circuit found that plaintiff's catalog, which combined both functional and non-functional elements, was protectable trade dress because the "particular configuration of design elements," when considered as a whole and not individually, was primarily non-functional. *Id.* at 658-59 ("[T]he critical functionality inquiry is not whether each individual component of the trade dress is functional, but rather whether the trade dress *as a whole* is functional.") (collecting cases); *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 304 F. Supp. 2d 726, 735-36 (D. Md. 2004) (noting that case law "does not prohibit a finding of protectable trade dress in all cases where a utility patent is involved") (citations omitted).

When viewed as a whole, Shibumi's design is non-functional under the four factors that courts typically consider. *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 313 (4th Cir. 2014). First, contrary to BSL's assertions, the "total image and overall appearance" of Shibumi's product design—including the distinctive way that the rectangular canopy is secured to the curved frame on only one side and blows freely in the wind—is <u>not</u> covered by any utility patent. It is, however, the subject of design patent applications, which by their very nature cover ornamental and not functional material. This distinction supports a finding of non-functionality.

4

*See Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 587, 597 (W.D. Pa. 2013). Second, Shibumi's advertising does not focus solely on utilitarian aspects but on the aesthetic features of Shibumi's design, including its novel and distinctive "free-flowing design." Second Supplemental Declaration of Dane Barnes ("3rd Barnes Decl.") ¶ 9. Third, competitors have available a nearly unlimited number of alternative designs for use in creating a product that performs the same function as the Shibumi Shade, to create a shaded area on a beach or other surface.[1] Fourth, Shibumi's distinctive design does not result in a comparatively simple or cheap method of manufacturing its product—in fact, the Shibumi Shade's manufacturing costs make it one of the more expensive beach shades on the market. 3rd Barnes Decl. ¶ 8. Thus, Shibumi's trade dress as a whole is non-functional.

### b. **Shibumi's novel and instantly recognizable beach shade has acquired distinctiveness in the marketplace.**

Not once does BSL claim that Shibumi's product design lacks distinctiveness—and for good reason, as one would be hard-pressed to find even a single beachgoer who has encountered one of Shibumi's novel, wildly popular, and instantly recognizable beach shades and not immediately noticed its distinctive character. Instead, BSL simply claims that Shibumi's initial brief did not include enough supporting evidence on this point. More specifically, BSL claims Shibumi's design lacks distinctiveness because Shibumi did not provide evidence about its advertising or sales volume or as to the association "with the origin of its product in the minds of the purchasing public." Dkt. 22 at 20.

---

[1] For example, a competing beach shade need not consist of (a) a rectangular canopy that is approximately 15 feet wide and 10 feet deep, is made of 100% polyester, and is secured to a frame on only one side, (b) a single continuous curved frame that is inserted into the sand on either end, (c) a single anchor line attached to the center of the frame, or (d) an anchor that is formed from the shade's carrying bag – and it most certainly does not need to consist of every single one of these elements at once. 3rd Barnes Decl. ¶ 7-8.

5

In fact, Shibumi's initial brief provided ample evidence of the highly distinctive nature of the Shibumi Shade.[2] As further support, however, Shibumi now submits additional evidence of the very kind that BSL believes can establish acquired distinctiveness. Specifically, Shibumi is submitting sworn declarations from 24 consumers and retailers attesting to the distinctiveness of Shibumi's design and confirming that whenever they see a shade with a singular frame that consists of pole segments secured to one another in an end-to-end alignment and to a surface, a canopy attached to the frame only on one side, and a cord extending from the center of the frame to an anchor, they immediately associate it with a single source—**Shibumi**.[3] This evidence provides overwhelming support for Shibumi's position that its product design has acquired secondary meaning. *See, e.g.*, *Mud Pie, LLC v. Belk, Inc.*, No. 3:18-cv-00607-RJC-DCK, 2019 WL 3268823 (W.D.N.C. July 18, 2019); *Camco Mfg. v. Jones Stephens Corp.*, 391 F. Supp. 3d 515, 523 (M.D.N.C. 2019).

BSL's intentional copying of Shibumi's product further confirms its distinctiveness where "[t]he Fourth Circuit applies a presumption of secondary meaning in trade dress infringement cases where [the] defendant intentionally copied the plaintiff's trade dress." *Camco Mfg.*, 391 F. Supp. 3d at 523 (citation omitted); *see also Leviton Mfg. Co.*, 304 F. Supp. 2d at 735-36 ("evidence of intentional direct copying establishes a prima facie case of secondary

---

[2] Shibumi Shade explained that it has used its design in commerce extensively and continuously for more than five years (which creates a presumption of acquired distinctiveness); has invested significant time, money, and effort in promoting its product; and has enjoyed considerable commercial success. Dkt 4 at 2, 13-14, 22; Dkt 5 ¶ 6, 9. The distinctiveness of Shibumi Shade's design has also been recognized repeatedly in the local and national media. *See, e.g.*, 3rd Barnes Decl. ¶17-29 NYT ("the effect is almost dreamlike"); WRAL TechWire ("a revolutionary design"); and Port City Daily ("Shibumi, in their beach-shattering, patent-holding novelty, couldn't be categorized").

[3] *See, e.g.*, Ex. A, Decl. of Art Graf ¶¶ 5, 7 ("To me, part of the Shibumi Shade's unique design is the way that the frame is arched or curved, unlike other beach shades that use four legs or a single pole like a traditional beach umbrella. Another aspect of the Shibumi Shade's design that is distinctive to me is the way that the canopy attaches on only one side and flaps freely in the wind.") Similar testimonials can be found in all of consumer and retailer declarations contemporaneously submitted by Shibumi Shade. 3rd Barnes Decl. Ex's. A-3-A-27.

meaning"). Here, BSL's owner has expressly admitted his intent to copy Shibumi's design, and a simple side-by-side comparison of the parties' respective products makes BSL's copying impossible to deny. Shibumi has provided more than enough evidence to demonstrate the acquired distinctiveness of its product design.[4]

### c. BSL's imitation product is likely to cause consumer confusion— and in fact already has.

Because the test for trade dress infringement is whether the overall appearance of a defendant's design is so similar to the plaintiff's design as to create a <u>likelihood</u> of confusion, evidence of <u>actual</u> confusion is not required. *See, e.g.*, *Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 607 (W.D. Penn. 2013). In fact, because evidence of actual confusion is often so difficult to obtain, courts routinely find infringement based on other, more traditional factors, such as the similarity of the parties' marks, products, and trade channels. Where evidence of actual confusion does exist, however, it is "strong proof of the fact of a likelihood of confusion." *McCarthy* § 23:13. Indeed, "[e]ven a few instances of actual confusion may be sufficient, <u>by themselves</u>, to establish a likelihood of confusion." *X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 623 (E.D. Va. 2001) (emphasis added). In this case, Shibumi has demonstrated a likelihood of confusion in both ways.

First, as explained in detail in Shibumi's initial brief, BSL's imitation product is likely to cause confusion given (a) the strength and distinctiveness of Shibumi's product design, (b) the

---

[4] BSL attempts to refute the Shibumi Shade's distinctiveness by pointing to Shibumi Shade's registration of its canopy colors on the Supplemental Register, but this is a red herring. Shibumi Shade is asserting trade dress rights in its overall product design, not just in its canopy colors, so BSL's point is irrelevant. Moreover, Shibumi Shade registered its color mark on the Supplemental Register initially because, when Shibumi Shade filed its application to register this mark in 2019, it had not yet been using the colors for five years and was not claiming acquired distinctiveness. That is no longer the case, as Shibumi Shade has been using its colors since at least as early as 2016 and is now entitled to a presumption that its colors have acquired distinctiveness. *See* 15 U.S.C. § 1052(f).

nearly identical overall appearance of the Beach Shade to the Shibumi Shade, (c) the identical nature of the parties' respective goods, (d) the direct overlap in trade channels and advertising, and (e) the relative unsophistication of the relevant class of consumers. Dkt 4 at 14. Second, Shibumi has presented clear evidence of actual consumer confusion, such as:

- An unsolicited message sent to Shibumi along with picture of BSL's imitation product stating: "*Hello! Is this your company or a sister company? I was interested in buying one – just love how you're able to anchor it down when there's no wind! However, I've gone on the website and can't find a way to purchase or contact anyone. Can you help me? Thank you!*" (3rd Barnes Decl. Ex's. A-1);

- A comment posted on BSL's Instagram account asking: "*Is this the same product as @shibumishade*" (3rd Barnes Decl. Ex's. A-2)

Contrary to BSL's claims, these examples do not show that consumers can "readily distinguish between the two products." Dkt. 22 at 23. In fact, they show just the opposite—that BSL's copy of the Shibumi Shade is causing consumers to mistakenly believe that BSL and Shibumi are related, that the parties' products come from the same source, or that the products actually are the same. There could scarcely be more compelling, direct evidence of confusion than this. BSL itself admits as much, citing Fourth Circuit law for the proposition that evidence of actual confusion is the most important factor and will "often by itself answer the question of whether there is a 'likelihood of confusion' between two marks at issue." Dkt. 22 at 22.

**B.**  **Shibumi Will Be Irreparably Harmed if the Injunction is Not Granted.**

Shibumi has submitted comments showing that consumers are deciding between only two products (the Beach Shade and the Shibumi Shade) and are choosing to purchase the Beach Shade instead of the Shibumi Shade because of its lower price point. *See, e.g.*, Dkt. 5-14, 15-2, 15-7, 15-8; 3rd Barnes Decl. ¶ 14. If BSL is allowed to continue selling their infringing product, Shibumi will be forced to lower its prices and alter its method of manufacturing to compete for customers who now expect to pay a lower price for products that incorporate the same distinctive

8

design. 3rd Barnes Decl. ¶ 15, 3rd Barnes Decl. Ex's. A-38-40. This evidence of lost sales and price erosion overwhelmingly supports a finding of irreparable harm. *See Edge-Works Mfg. Co. v. HSG, LLC*, 285 F. Supp. 3d 883, 900 (E.D.N.C. 2018) (noting price erosion is a valid ground for finding irreparable harm); *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 881-82 (E.D. Va. 2011).[5]

Shibumi has also presented evidence that it has a reputation as an innovator in the beach shade industry (*see* 3rd Barnes Decl. ¶¶ 17-29) and has spent years building goodwill and reputation among its customers, which has resulted in significant brand loyalty—a fact demonstrated by the number of Shibumi's customers that reached out (unsolicited) to Shibumi with concerns after seeing BSL's "knock off" product. *See* Dkts. 5-11, 5-12, 5-13, 15-3, 15-4, 15-5, 15-11. Unlike in the *Edge-Works Mfg. Co. v. HSG, LLC*, 285 F. Supp. 3d 883 (E.D.N.C. 2018) case cited by BSL, there is no dispute that consumers see Shibumi—not BSL—as the innovator of Shibumi's distinctive design and BSL as the copycat. *See id.* at 902. Shibumi has also taken great pains to protect its innovations and has made the deliberate decision to never license its intellectual property—despite receiving several inquiries—to maintain market exclusivity. 3rd Barnes Decl. ¶ 31. Shibumi's reputation would be irreparably damaged if the industry believed that it did not enforce its intellectual property rights against "knock off" products, especially given the considerable investment consumers have made in monitoring the market for potential infringers. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013) (noting that the plaintiff's "reputation as an innovator will certainly be damaged

---

[5] BSL has not rebutted Plaintiff's evidence of lost sales or customers—instead simply claiming that such evidence is insufficient to establish irreparable harm (which it plainly is not). Tellingly, BSL does not address Plaintiff's claim that BSL is insolvent and that any money damages awarded will be unrecoverable.

if customers found the same 'innovations' appearing in competitors' [products]" and if "dealers and distributors believed it did not enforce its intellectual property rights," particularly where the plaintiff had never licensed its intellectual property to maintain market exclusivity); *Dynamic Aviation Grp., Inc. v. Dynamic Int'l Airways*, No. 5:15-CV-00058, 2016 U.S. Dist. LEXIS 39248 (W.D. Va. Mar. 24, 2016) ("The loss of goodwill or industry reputation is a well-recognized basis for finding irreparable harm") (citations omitted).

### C. The Balance of Harms and Public Interest Weighs in Shibumi's Favor.

Shibumi has demonstrated that it is likely to succeed on the merits of at least one of its claims and that it will suffer irreparable harm in the absence of an injunction. BSL claims it may be forced to close its business and its reputation will be "irreversibly maligned" if the injunction is granted, but this does not tip the balance of harms in BSL's favor. *See Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 882 (E.D. Va. 2011). BSL's deliberate decision to launch a nearly identical product that trades on Shibumi's established reputation and goodwill (as opposed to building its own) tips the balance of harms against it, as any harm BSL may suffer as a result of the injunction is self-inflicted. *See Atl. Pinstriping, LLC v. Atl. Pinstriping Triad, LLC*, No. 3:16-CV-547-GCM, 2016 WL 5376294 (W.D.N.C. Sept. 23, 2016) ("The balance of the equities tips in favor of the Plaintiffs. Any alleged potential harm to Defendants is a result of Defendants' own conduct."). Further, BSL's agreement to the Consent Order enjoining sales during this summer period underscores the lack of harm it would suffer from an injunction. Finally, BSL presents no compelling public interest which would outweigh the interests in "preventing future consumers from being misled," *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995), and "protecting Plaintiffs' intellectual property rights." *EMI Apr. Music Inc. v. Rodriguez*, 691 F. Supp. 2d 632, 635 (M.D.N.C. 2010). This factor also weighs in favor of granting the injunction.

Dated: July 30, 2021						Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Preston H. Heard*
Samuel Hartzell
North Carolina Bar No. 49256
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone:  919-755-2112
Facsimile:  919-755-6772
Sam.Hartzell@wbd-us.com

Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
Lauren Baker (*pro hac vice* to be filed)
Georgia Bar No. 345536
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 862-7527
Facsimile: (404) 879-2966
Preston.heard@wbd-us.com
Telephone: (404) 888-7466
Lauren.Baker@wbd-us.com

*Attorneys for Plaintiff Shibumi Shade, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby confirms that on July 30, 2021, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which will send notifications of such filing to the counsel of record.

/s/ *Preston H. Heard*
Preston H. Heard