## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| SHIBUMI SHADE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 5:21-cv-256 |
| | ) | |
| v. | ) | |
| | ) | |
| BEACH SHADE LLC, and | ) | |
| MATTHEW FINNERAN | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S CLAIM CONSTRUCTION BRIEF FOR
## PRELIMINARY INJUNCTION PHASE

Plaintiff Shibumi Shade, Inc. submits this memorandum in support of its claim construction positions for its Emergency Motion for Temporary Restraining Order (Dkt. 3). The terms of the asserted patents are straightforward, and the presumption that courts give claim terms their ordinary and customary meaning should not be disturbed. Defendants' ("BSL") proposals depart from the plain meaning and inject verbose constructions that are redundant and unduly narrow.

## I.      LEGAL STANDARD

"Claim construction seeks to ascribe the ordinary and customary meaning to claim terms as a person of ordinary skill in the art would have understood them at the time of invention." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1310 (Fed. Cir. 2017) (citing *Phillips*, 415 F.3d at 1312-14). Indeed, "a party wishing to alter the meaning of a clear claim term must overcome the presumption that the ordinary and accustomed meaning is the proper one, demonstrating why such an alteration is required." *K-2 Corp. v. Salomon, S.A.*, 191 F.3d 1356, 1363-64 (Fed. Cir. 1999). Intrinsic evidence, such as the specification and prosecution history for the patent at issue, is usually the best guide to the meaning of the terms in the claims at issue. *Phillips*, 415 F.3d at 1315, 1317. Extrinsic evidence is to be considered only "in the rare circumstance that the court is unable to determine the meaning of the asserted claims after assessing the intrinsic evidence[.]" *Bell Atl. Network Servs. v. Covad Commc'ns Grp.*, 262 F.3d 1258, 1268-69 (Fed. Cir. 2001).

For prosecution history disclaimer to apply, Defendants must point to "unequivocal[]" or "unambiguous[]" disavowals of claim scope in the prosecution history for either the '330 or '117 Patents. *See Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (prosecution history

1

disclaimer does not apply "[w]here the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations'") (citation omitted). As explained below, Defendants have not pointed to any such statements here, so prosecution history disclaimer does not apply.

## II. DISPUTED CLAIM TERMS

### A. "Single"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "single" (claim 1, '330 patent) | No construction necessary / plain and ordinary meaning | "consisting of or having only one undivided part as contrasted with double or many" |

Claim 1 of the '330 Patent recites "a single, continuous frame" "wherein the frame consists essentially of a plurality of sections configured for end-to-end alignment from a left end to a right end, wherein each section is configured to engage with any adjacent section." Dkt. 1-7, 8:1-6. The '330 Patent specification similarly defines "**a frame**; the frame consisting essentially of a **plurality of sections** configured for end-to-end alignment[.]" *Id.* at 1:48-52 (emphasis added); *see also id.* 7:39-43. In this context, a person of ordinary skill in the art ("POSITA") would understand that "single" refers to the overall configuration of the frame (i.e., a plurality of sections configured for end-to-end alignment) and not simply the number of components making up the frame.

Defendants' proposed construction of "single" as "consisting of or having only one undivided part as contrasted with double or many" should be rejected because it directly contradicts the claim language and intrinsic evidence and introduces ambiguity where there otherwise is none. As explained above, the specification explicitly describes that a plurality of sections which are joined together in an end-to-end alignment define "a" (singular) frame – not "a lone, undivided frame" (Dkt. 22 at 14) or "undivided part" (Dkt. 26-1 at 1). Indeed, the concept "undivided" is found nowhere in the '330 Patent specification or its claims and would

2

render superfluous language that the frame consists of a "plurality of sections." Further, as shown in Appendix A, when Defendants' proposed construction is substituted for "single," the claim language is rendered confusing and nonsensical. *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (stating that claim construction is "not an obligatory exercise in redundancy").

### B. "Continuous Frame"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "continuous frame" (claim 1, '330 patent) | No construction necessary / plain and ordinary meaning | "Uninterrupted frame (the archway formed from one beach/surface touching end to the other beach/surface touching end)" |

Claim 1 recites a "continuous frame" "wherein the frame consists essentially of a plurality of sections configured for end-to-end alignment from a left end to a right end, wherein each section is configured to engage with any adjacent sections." Dkt. 1-7, 8:1-6. The specification of the '330 Patent explains that "[a]djacent sections 24 of the plurality of sections 24 may be engaged or coupled into end-to-end alignment to configure the frame 14 from a left end 20 to a right end 22 into a supporting configuration." Dkt. 1-7, 7:39-43; *see also id.* 5:6-14. In this context, a POSITA would understand that a "continuous frame" is one that extends from a left end to a right end in a supporting configuration as a result of the plurality of sections being engaged or coupled in an end-to-end alignment. Put more simply, a "continuous frame" is a frame extending from a left end to a right end in any end-to-end alignment.

Like its proposed construction of "single," Defendants' proposed construction of "continuous frame" should be rejected because it contradicts the '330 Patent specification and claims and introduces the concept of "uninterrupted" which is not found anywhere in the intrinsic evidence. *See K-2*, 191 F.3d at 1363-64 (noting that "[c]ourts do not rewrite claims; instead, we give effect to the terms chosen by the patentee"); *see also* Dkt. 26-1 (none of

Defendants' intrinsic evidence supports "uninterrupted"). Further, Defendants' verbose proposed construction is confusing, redundant, and unnecessary. *Ethicon*, 103 F.3d at 1568.

### C.   "Interior"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "interior" (claim 1, '330 patent) | No construction necessary / plain and ordinary meaning | the "internal portion or inside" [of something] |

Claim 1 of the '330 Patent recites a cord "coupled to an interior of the container for inverting the container to serve as the anchor." Dkt. 1-7, 8:15-17. Contrary to Defendants' assertion, this language was <u>not</u> added in response to the Examiner's refusal of the claims in prosecution (Dkt. 22 at 11). The specification of the '330 Patent describes that the container may be partially or fully inverted. When the container is fully inverted, the specification recites that the compartment 77 may be "exterior to the anchor 34 and any weight 36." *See, e.g.*, *id.* 6:57-7:3 ("When the cord 32 is engaged or coupled to an interior 72 and bottom 74, the pulling of the cord 32 may result in the ***full inversion*** of the container 70 . . . the inversion of the container 70 may result in the compartment 77 ***being exterior*** to the anchor 34 and any weight 36.") (emphasis added). The specification thus treats "interior" and "exterior" as dynamic positions that may be altered upon inversion of the container. Put more simply, a POSITA would understand that the term "interior" as it is used in the '330 Patent and specification does not refer to one fixed or "true" surface of the container but rather depends upon whether the container is inverted and, if so, which surface of the container faces outward.

Defendants' proposed construction should be rejected because it violates the plain and ordinary meaning of the term as it is used in the '330 Patent in that it presupposes that there can only be one true "interior" surface of the container. The claims and specification of the '330

Patent are not so limited and expressly contemplate that the container may be fully inverted thereby altering which surface is "interior" and which is "exterior."

### D. "Extending Through"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "extending through" (claim 1, '117 patent) | No construction necessary / plain and ordinary meaning | "stretching forth from one end or side to the other" |

Claim 1 of the '117 Patent recites "a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section . . ." Dkt. 1-9, 8:14-24. The specification likewise describes the cable as "extending through the plurality of sections 24 of the frame 12 from the left end 20 to the right end 22" and providing "supporting tension to the end-to-end alignment of the supporting configuration." *Id.* 5:38-46; *see also id.* 6:17-20 (noting that the purpose of the cable "extending through" is to "provide support to the frame 14"). A POSITA would understand that the cable extends through the plurality of sections of the frame from the left end to the right end for the purpose of supporting the end-to-end alignment of the sections. This understanding of the meaning of "extending through" is consistent with extrinsic evidence including dictionary definitions to the extent such evidence is needed (it is not). *See Webster's Seventh New Collegiate Dictionary* (1967) (defining "extend" as "to stretch out in distance, space, or time").

Defendants' proposed construction of "extending through" should be rejected because it contradicts and improperly narrows the plain language of the claims and specification. Nothing in the '117 Patent limits the cable to extending through the plurality of sections "without interruption" (*see* Dkt. 22 at 15), as that concept is found nowhere in the '117 Patent. *See K-2*, 191 F.3d at 1363-64.

Dated: July 30, 2021

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Preston H. Heard
Samuel Hartzell
North Carolina Bar No. 49256
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone:  919-755-2112
Facsimile:  919-755-6772
Sam.Hartzell@wbd-us.com

Preston H. Heard
Georgia Bar No. 476319
Lauren Baker
Georgia Bar No. 345536
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 862-7527
Facsimile: (404) 879-2966
Preston.heard@wbd-us.com
Telephone: (404) 888-7466
Lauren.Baker@wbd-us.com

*Attorneys for Plaintiff Shibumi Shade, Inc.*

6

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 30, 2021, the foregoing document was this date electronically filed and served on all parties to this action through the Court's CM/ECF system.

/s/ Preston H. Heard
Preston H. Heard

# **APPENDIX A**

Claim 1 of the '330 Patent, with Defendants' proposed constructions substituted for the plain claim language:

1.  A system for providing shade onto a surface, comprising:

    a canopy configured for engagement with, and complete aerial suspension by, a ~~single~~ consisting of or having only one undivided part as contrasted with double or many, ~~continuous frame~~ uninterrupted frame (the archway formed from one beach/surface touching end to the other beach/surface touching end),

    wherein the frame consists essentially of a plurality of sections configured for end-to-end alignment from a left end to a right end, wherein each section is configured to engage with any adjacent sections,

    wherein the left end and the right end are configured to be secured to the surface for aerially supporting the frame and completely suspending the canopy aerially, and

    a container for housing and transporting all of the other components of the system, wherein the container is also an anchor for housing weight,

    a cord selectively engaged or coupled to an ~~interior~~ internal portion or inside of the container for inverting the container to serve as the anchor for housing weight, the cord selectively engageable or coupled to the frame.