**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SHIBUMI SHADE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:21-CV-256-FL** |
| | ) | |
| **BEACH SHADE, LLC and** | ) | |
| **MATTHEW FINNERAN** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR RECONSIDERATION**

Pursuant to Fed. R. Civ. P. 54(b), 59(e), and 65(c), Defendants Beach Shade, LLC ("Beach Shade") and Matthew Finneran (collectively, "Defendants"), through counsel, respectfully submit this Memorandum of Law in Support of their Motion for Reconsideration of the Court's February 8, 2022 Preliminary Injunction Order. (DE 41.)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

  I.  Legal Standard ....................................................................................................... 3

  II.  The Court Misapplied the Doctrine of Equivalents and Erred in Concluding
     Shibumi Established a Likelihood of Success on the Merits of its Patent Claim. ............. 5

     A.    Beach Shade lacks a cord connecting to an interior of container. ......................... 7

     B.    Beach Shade lacks a cable extending through the plurality of
           longitudinally-extending sections. ......................................................................... 10

     C.    Beach Shade was entitled to rely on these express limitations in designing
           around the Asserted Patents. ................................................................................ 12

  III.  The Court Incorrectly Found Shibumi Would Suffer Irreparable Harm. ........................ 13

     A.    The Harm Shibumi Allegedly Suffered is Compensable and Does Not
           Constitute Irreparable Harm. ............................................................................... 14

     B.    Shibumi Failed to Provide Evidence of Lost Sales, Market Share and
           Customers. ......................................................................................................... 15

  IV.  In Balancing the Equities the Court Discounted the Irreparable and Certain Harm
     to Beach Shade. ..................................................................................................... 22

  V.  The Court Miscalculated Beach Shade's Sales, Ignored Beach Shade's Costs, and
     Therefore Set an Insufficient Bond. ......................................................................... 24

CONCLUSION .............................................................................................................. 28

CERTIFICATE OF SERVICE ......................................................................................... 29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Andrx Pharms., Inc.,*
   452 F.3d 1331 (Fed. Cir. 2006) ................................................................. 15

*ADT LLC v. Alarm Protection LLC,*
   No. 9:15-cv-80073, 2017 WL 1881957 (S.D. Fla. 2017) .......................... 20

*Am. Canoe Ass'n v. Murphy Farms, Inc.,*
   326 F.3d 505 (4th Cir. 2003) ................................................................... 3, 4

*Anderson v. Kimberly-Clark Corp.,*
   570 F. App'x 927 (Fed. Cir. 2014) .............................................................. 1

*Apple Inc. v. Samsung Elecs. Co.* (Apple 1),
   678 F.3d 1314 (Fed. Cir. 2012) ................................................................. 19

*Apple Inc. v. Samsung Elecs. Co., Ltd.,*
   No. 12-cv-630, 2018 WL 905943 (N.D. Cal. Feb. 15, 2018) ...................... 6

*Apple, Inc. v. Samsung Electronics Co.* (Apple,
   IV), 809 F.3d 633 (Fed. Cir. 2015) ........................................................... 18

*Automated Merch. Sys., Inc. v. Crane Co.,*
   357 F. App'x 297 (Fed. Cir. 2009) ....................................................... 15, 17

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns. Grp., Inc.,*
   262 F.3d 1258 (Fed. Cir. 2001) ............................................................... 7, 8

*Bianco v. Globus Med., Inc.,*
   2014 WL 1049067 (E.D. Tex. Mar. 17, 2014) .......................................... 22

*Bicon, Inc. v. Straumann Co.,*
   441 F.3d 945 (Fed. Cir. 2006) .................................................................... 8

*Boddicker v. Am. Honda Motor Co.,*
   No. 10-1018, 2011 WL 6132099 (N.D. Iowa Dec. 8, 2011) ...................... 20

*Bona Fide Conglomerate, Inc. v. United States,*
   96 Fed. Cl. 233 (2010) .............................................................................. 27

*Carlson v. Boston Sci. Corp.,*
   856 F.3d 320 (4th Cir. 2017) ...................................................................... 4

ii

*Conopco, Inc. v. May Dep't Stores Co.*,
46 F.3d 1556 (Fed. Cir. 1994)...................................................................... 9

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
952 F.2d 802 (4th Cir. 1991) ................................................................... 4, 13

*Dixon v. Edwards*,
290 F.3d 699 (4th Cir. 2002) ...................................................................... 25

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
914 F.3d 1347 (Fed. Cir. 2019)..................................................................... 6

*Earhart v. Countrywide Bank, FSB*,
No. 3:08-cv-238, 2009 WL 2998055 (W.D.N.C. Sept. 15, 2009)........................... 20

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)............................................................................. 14, 22

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982)............................................................................. 26, 27

*Edge-Works Mfg. Co.v. HSG, LLC*,
285 F. Supp. 3d 883 (E.D.N.C. 2018).......................................................... 22

*EEOC v. Lockheed Martin Corp.*,
116 F .3d 110 (4th Cir. 1997) ...................................................................... 3

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
149 F.3d 1309 (Fed. Cir. 1998)................................................................. 8, 10

*F.T.C. v. Verity Int'l, Ltd.*,
124 F. Supp. 2d 193 (S.D.N.Y. 2000)........................................................... 23

*Fayetteville Inv'rs v. Comm. Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) ..................................................................... 3

*Fleet Feet, Inc. v. Nike Inc.*,
419 F. Supp. 3d 919 (M.D.N.C. 2019) .......................................................... 25

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005)............................................................. passim

*George Sink PA Injury Lawyers v. George Sink II Law Firm LLC*,
No. 2:19-cv-01206, 2019 WL 6318778 (D. S.C. Nov. 26, 2019)........................... 25

*Hill v. Braxton*,
277 F.3d 701 (4th Cir. 2002) ...................................................................... 3

iii

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ................................................................ 25, 27

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
17 F.3d 691 (4th Cir. 1994) .................................................................. 14, 22

*Huskey v. Ethicon, Inc.*,
848 F.3d 151 (4th Cir. 2017) ...................................................................... 28

*Hutchinson v. Statoil*,
994 F.2d 1076 (4th Cir. 1993) ...................................................................... 3

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
609 F. Supp. 2d 951 (N.D. Cal. 2009) ......................................................... 23

*Illinois Tool Works v. Grip-Pak, Inc.*,
906 F.2d 679 (Fed. Cir. 1990)...................................................................... 24

*In re Microsoft Corp. Antitrust Litig.*,
333 F.3d 517 (4th Cir. 2003) .................................................................. 4, 24

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
205 F.3d 1377 (Fed. Cir. 2000)..................................................................... 6

*Jenkinson v. Highmark W. Va., Inc.*,
No. 3:19-cv-83, 2019 WL 2341668 (N.D. W. Va. June 3, 2019)...................... 26

*Lab. Corp. of Am. Holdings v. Kearns*,
84 F. Supp. 3d 447 (M.D.N.C. 2015) ...................................................... 25, 28

*League of Women Voters of North Carolina v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) ...................................................................... 24

*Lego A/S v. Zuru Inc.*,
799 F. App'x 823 (Fed. Cir. 2020) ............................................................... 22

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
324 F.3d 1308 (Fed. Cir. 2003)...................................................................... 7

*Madison River Mgmt. Co. v. Business Mgmt. Software Corp.*,
402 F. Supp. 2d 617 (M.D.N.C. 2005) ........................................................... 3

*Marine Indus. Const., LLC v. United States*,
151 Fed. Cl. 349 (2020) .............................................................................. 20

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) (per curiam ............................................................. 5, 14

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed.Cir.1996)..................................................................................... 9

*Mead Johnson & Co. v. Abbott Labs.*,
    201 F.3d 883 (7th Cir. 2000) .................................................................................... 25

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
    708 F. Supp. 2d 527 (D. Md. 2010).......................................................................... 21

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
    857 F.3d 858 (Fed. Cir. 2017)..................................................................................... 6

*Novartis Pharm. Corp. v. Abbott Labs.*,
    375 F.3d 1328 (Fed. Cir. 2004) ............................................................................... 12

*Novus Franchising, Inc. v. Dawson*,
    725 F.3d 885 (8th Cir. 2013) .................................................................................... 17

*Nutrition 21 v. United States*,
    930 F.2d 867 (Fed. Cir. 1991)............................................................................ 15, 22

*Nutrition & Fitness, Inc. v. Progressive Emu, Inc.*,
    No. 5:12-cv-192-F, 2012 WL 1478734 (E.D.N.C. Apr. 27, 2012)........................... 21

*Otsuka Pharm Co., Ltd. v. Torrent pharm. Ltd., Inc.*,
    99 F. Supp. 3d 461 (D. N.J. 2015)........................................................................... 24

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
    148 F.3d 396 (4th Cir. 1998) ..................................................................................... 3

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ..................................................................................... 4

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
    833 F.2d 931 (Fed. Cir. 1987).................................................................................. 13

*Pergo, Inc. v. Faus Grp., Inc.*,
    401 F. Supp. 2d 515 (E.D.N.C. 2005)...................................................................... 15

*Pfizer, Inc. v. Astra Pharm. Products, Inc.*,
    No. 92 CIV.752 (KC), 1992 WL 685742 (S.D.N.Y. Feb. 20, 1992)......................... 23

*Pressure Specialist, Inc. v. Next Gen Mfg. Inc.*,
    469 F. Supp. 3d 863 (N.D. Ill. 2020) ......................................................................... 6

*Pro-Concepts, LLC v. Resh*,
    No. 2:12-cv-573, 2013 WL 5741542 (E.D. Va. Oct. 22, 2013) ............................... 15

*Rathmann Grp. v. Tanenbaum,*
    889 F.2d 787 (8th Cir. 1989) ........................................................................ 25

*Rauch Indus., Inc. v. Radko,*
    No. 3:07-cv-197C, 2007 WL 3124647 (W.D.N.C. Oct. 25, 2007) ........................................ 24

*S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.,*
    696 F.3d 771 (8th Cir. 2012) ........................................................................ 15

*S & D Land Clearing v. D'Elegance Mgmt. Ltd.,*
    34 F. App'x 884 (4th Cir. 2002) .................................................................... 26

*Sage Products, Inc. v. Devon Industries, Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997) ............................................................... 9, 10, 11, 12

*Saint Annes Dev. Co., Inc. v. Trabich,*
    2011 WL 3608453 (4th Cir. Aug. 17, 2011) ............................................................ 4

*Sampson v. Murray,*
    415 U.S. 61 (1974) ................................................................................ 14

*SAS Inst., Inc. v. World Programming Ltd.,*
    874 F.3d 370 (4th Cir. 2017) ................................................................. 4, 23, 24

*Southtech Orthopedics, Inc. v. Dingus,*
    428 F. Supp. 2d 410 (E.D.N.C. 2006) ................................................................ 21

*Spacemax Int'l, LLC v. Core Health & Fitness, LLC,*
    No. 2:13-4015, 2013 WL 5817168 (D. N.J. Oct. 28, 2013) .............................................. 15

*Starhome GmbH v. AT&T Mobility LLC,*
    743 F.3d 849 (Fed. Cir. 2014) ...................................................................... 11

*State Indus. Inc. v. A.O. Smith Corp.,*
    751 F.2d 1226 (Fed. Cir. 1985) ..................................................................... 13

*Taylor v. Freeman,*
    34 F.3d 266 (4th Cir. 1994) ........................................................................ 24

*TiVo Inc. v. EchoStar Corp.,*
    646 F.3d 869 (Fed. Cir. 2011) ...................................................................... 13

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC,*
    899 F.3d 236 (4th Cir 2018) ........................................................................ 4

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) ................................................................................. 2

vi

*Visto Corp. v. Sproquit Techs., Inc.*,
    413 F. Supp. 2d 1073 (N.D. Cal. 2006) ................................................................. 24

*Voda v. Cordis Corp.*,
    536 F.3d 1311 (Fed. Cir. 2008) ........................................................................... 19

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ............................................................................... 7, 12, 13

*Wilson-Cook Med., Inc. v. Wiltek Med., Inc.*,
    No. 90-2911, 1991 WL 27150 (4th Cir. Mar. 6, 1991) .......................................... 23

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................. 4, 5, 14

*Zelinski v. Brunswick Corp.*,
    185 F.3d 1311 (Fed. Cir. 1999) ............................................................................. 5

*Z–Man Fishing Prod., Inc. v. Renosky*,
    790 F. Supp. 2d 418 (D.S.C. 2011) ..................................................................... 21

## Rules

Fed. R. Civ. P. 54(b) ............................................................................................ 3, 4

Fed. R. Civ. P. 59(e) ............................................................................................ 3, 4

Fed. R. Civ. P. 65(c) ................................................................................. 3, 24, 26, 27

Fed. R. Evid. 801 .................................................................................................. 20

## Other Authorities

11A Charles Alan Wright et al., Federal Practice & Procedure § 2954, at 292 (2d ed.1995) ...... 27

13 Moore's Federal Practice—Civil § 65.50 .............................................................. 25

.

## INTRODUCTION

Defendant Beach Shade's[1] only product, which is currently subject to this Court's February 8, 2022 Preliminary Injunction Order ("Order"), was purposefully designed around and did avoid Plaintiff Shibumi Shade, Inc.'s ("Plaintiff" or "Shibumi") asserted intellectual property. The fact that Beach Shade sells a cheaper product manufactured in China does not make it an unlawful "knock off" as Shibumi asserts. Rather it is a legitimate competitive product sold at a lower price point making it more accessible to consumers. Shibumi did not and cannot establish a likelihood of success on its claims. Notably, the patent office issued the asserted 330 Patent and 117 Patent (the "Asserted Patents") without considering Korean Patent KR101315166, figure 1 of which is depicted below.[2] This critical prior art recently forced Shibumi to substantially narrow its claims in a related continuation application, and calls into question the validity of the Asserted Patents.



---

[1] Beach Shade, LLC is the only relevant and proper party to this proceeding, as will be addressed in a subsequent motion to dismiss Defendant Matthew Finneran from the case.

[2] This Court can take judicial notice of the publicly available patent file history and cited references of the Assert Patents' related family of applications, including U.S. Patent No. 11,255,103 that just issued February 22, 2022, at www.uspto.gov. *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014).

1

The Korean reference, along with the evidence that Shibumi's product design is functional and therefore not entitled to trade dress protection (*e.g.*, DE 50, Aug. 6, 2021 Preliminary Injunction Hearing Transcript ("Hearing Tr.") at 47-50 (conceding that all components in the Shibumi product "function to create shade")), leaves little intellectual property left for Shibumi to assert beyond certain narrow limitations in the Asserted Patents, namely: (A) "a cord selectively engaged or coupled to ***an interior*** of the container ***for inverting the container*** to serve as the anchor for housing weight"; and (B) "a cable extending through the plurality of longitudinally-extending sections of the frame"—each of which are missing from Beach Shade's product, thereby precluding infringement.

It is specifically this Court's doctrine of equivalents and irreparable harm analyses and findings that Beach Shade respectfully requests be reconsidered, and which led to an improper grant of a preliminary injunction that should be lifted. A proper view of the law on the doctrine of equivalents recognizes the "all elements rule" that precludes the application of the doctrine if such a finding would entirely vitiate a claim limitation, as was the case here. Moreover, Shibumi failed to carry its burden of proof to show, with evidence and not mere speculation, that it would suffer irreparable harm, thereby separately precluding entry of a preliminary injunction.

A misapplication of law and fact here is understandable as courts often consider requests for preliminary injunctions in "haste," with "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). As such, Beach Shade respectfully requests that this Court reconsider and, for any one of the reasons set forth below, lift the preliminary injunction.[3]

---

[3] Alternatively, if the injunction is sustained, the bond required to secure the preliminary injunction is far below what should have been required to secure Beach Shade's lost sales and incidental and

# ARGUMENT

## I. Legal Standard

As an interlocutory order, the Court's Order may be properly reconsidered under Rule 59(e) and Rule 54(d). Rule 59(e) of the Federal Rules of Civil Procedure allows a party to file a motion to alter or amend a judgment on three grounds: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence that was not available at trial, or (3) to correct a clear error of law or prevent manifest injustice. *See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co*., 148 F.3d 396, 403 (4th Cir. 1998); *EEOC v. Lockheed Martin Corp*., 116 F .3d 110, 112 (4th Cir. 1997); *Hutchinson v. Statoil*, 994 F.2d 1076, 1081 (4th Cir. 1993). Reconsideration is appropriate "when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Madison River Mgmt. Co. v. Business Mgmt. Software Corp*., 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005). A Rule 59(e) motion may not be based simply on renewing arguments, but must address clear errors of law or fact. *See Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002).

Further, any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Order entering a preliminary injunction is an interlocutory order which can be reviewed by this court, "on motion or *sua sponte*, at any time prior to the entry of a final judgment." *Fayetteville Inv'rs v. Comm. Builders, Inc*., 936 F.2d 1462, 1472 (4th Cir. 1991); *accord Am. Canoe Ass'n v. Murphy Farms, Inc*., 326 F.3d 505, 514-15 (4th Cir. 2003). The Fourth Circuit has held that a court may revise an interlocutory order under Rule 54(b) in three circumstances: "(1) a

---

consequential costs stemming from the improvident injunction, Fed. R. Civ. P. 65(c), and should therefore be modified. (*See infra* at Sec. V.)

3

subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quoting *Am. Canoe Ass'n*, 326 F.3d at 515); *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236 (4th Cir 2018). When assessing a Rule 54(b) motion for reconsideration, however, these standards are not applied with the same strictness as when they are used under Rule 59(e). *See Am. Canoe Ass'n*, 326 F.3d at 514–15; *Saint Annes Dev. Co., Inc. v. Trabich*, No. 102078, 2011 WL 3608454, at *3 (4th Cir. Aug. 17, 2011) ("The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders.") (citations omitted).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *accord Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (holding that preliminary injunctions are "extraordinary remed[ies] involving the exercise of very far-reaching power"). Such relief is only available where a party shows (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if the injunctive relief is denied, (3) the balance of equities tips in its favor, and (4) such injunctive relief would be in the public interest. *Id.* "Satisfying these four factors is a high bar, as it should be." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 67 (2018).

The movant must make "a clear showing of irreparable harm," *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991), which must be "actual and imminent," not remote or speculative. *Id.* If the movant cannot show a "need to protect the status quo and to prevent irreparable harm a preliminary injunction should not be considered." *In re*

4

*Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

## II.     The Court Misapplied the Doctrine of Equivalents and Erred in Concluding Shibumi Established a Likelihood of Success on the Merits of its Patent Claim.

The Court properly held that Shibumi "has not shown a likelihood of success on the merits under a literal infringement theory." (Order at 15.) As recognized, the accused Beach Shade product does not include: (A) "a cord selectively engaged or coupled to ***an interior*** of the container ***for inverting the container*** to serve as the anchor for housing weight"; nor (B) "a cable extending through the plurality of longitudinally-extending sections of the frame." (Order at 15 n.5.)

Accordingly, Shibumi could only have met its high burden of showing a likelihood of success on the merits of its patent infringement claim if proper ***equivalents*** of these missing literal elements were identified in the accused Beach Shade product. *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999). The Court, with only minimal briefing and argument from the parties on the subject,[4] applied the fact dependent "doctrine of equivalents" to conclude that these literally missing elements were equivalently present. Namely, the accused product's "external connection point" for coupling the cord to the anchor was found to be equivalent to the required "cord selectively engaged or coupled to an interior of the container for inverting the container to serve as the anchor for housing weight," (Order at 17-18), and the accused product's two cable system—that does not "extend through" the entirety of the frame—was found to be equivalent to

---

[4] Shibumi's opening brief is silent as to equivalents, leaving Beach Shade to guess as to how Shibumi might argue. The result is less than two pages of briefing on the subject (DE 22 at 16-17; DE 28 at 3), and limited discussion at the hearing. (DE 50, Hearing Tr. at 144-150.)

the claimed "cable extending through the plurality of longitudinally-extending sections . . . [including] the at least one intermediate longitudinally-extending sections." (Order at 20-21.)

Whether a claim element is present under the doctrine of equivalents is a "fact-intensive, case-specific inquiry." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-cv-630, 2018 WL 905943, at *15 (N.D. Cal. Feb. 15, 2018) (citing *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005) (collecting cases)). Accordingly, application of the doctrine is generally "disfavored as the basis for a preliminary injunction because 'that highly factual inquiry rarely comes clear on a premature record.'" *Pressure Specialist, Inc. v. Next Gen Mfg. Inc.*, 469 F. Supp. 3d 863, 871–72 (N.D. Ill. 2020) (quoting *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1384 (Fed. Cir. 2000)); *accord Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed. Cir. 2017) (reversing grant of preliminary injunction based on doctrine of equivalents and remarking how "unusual" such grants are).

Nevertheless, on this limited record, the Court applied the "function-way-result" test to conclude that certain elements of the accused device performed "substantially the same function in substantially the same way to obtain the same result" of elements in the patent claims. (Order at 16 (citing *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019)).) The Beach Shade's externally attached cord, for example, was found to perform "substantially the same function" as "coupling a cord to the interior of the container." (Order at 18.) And the Beach Shade's "two-cable" system was found to be equivalent to the claimed requirement that the cable extend through the plurality of longitudinally-extending sections of the frame from one end to the other. (Order at 20.)

The Court overlooked, however, that the doctrine of equivalents is limited not only by prosecution history estoppel (which was considered but misapplied), but also the so-called "all

elements rule." The "all elements rule" has two primary implications, separate and apart from prosecution history estoppel. First, as recognized by the Court, equivalence must be assessed on a limitation by limitation basis, rather than from the perspective of the invention as a whole. (Order at 16 (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)).)

But the second important aspect of the rule was not considered, specifically: an element of an accused product is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate a claim limitation. *Warner-Jenkinson*, 520 U.S. at 29 ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."); *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("all elements rule" precludes application of the doctrine of equivalents where doing so "would entirely vitiate a particular claim[ed] element."); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns. Grp., Inc.*, 262 F.3d 1258, 1280 (Fed. Cir. 2001) ("there can be no infringement under the doctrine of equivalents if even one element of a claim or its equivalent is not present in the accused device"). Critically, the Court's doctrine of equivalents analysis improperly reads out specific limitations required by the claims, rendering the doctrine inapplicable.

### A. Beach Shade lacks a cord connecting to an interior of container.

The Court's analysis of the accused device's exterior cord attachment point addresses only a portion of the 330 Patent's claim. Specifically, the Court held that "connecting the frame to the exterior of the carrying bag . . . performs substantially the same function as the 330 Patent's selectively engaging or coupling a cord to the interior of the container." (Order at 17.) But this analysis ignores both (1) the stated function in the 330 Patent specification that "the container may be inverted for housing weight for ensuring that minimal amounts of weight (*e.g.*, sand) remain in the container once re-inverted," (Order at 18 (citing DE 1-7, 330 Patent, col. 6, lines 43-48)), but

7

more importantly, (2) the specific claim limitation that requires "***inverting the container*** to serve as the anchor." *Bell Atl.*, 262 F.3d at 1280 ("Bell Atlantic's theory of equivalence would entirely vitiate the claim limitations"). Thus, it is not enough that the external connection point may provide the equivalent of an internal connection point for the limited purpose of anchoring the frame (as the Court concluded). It must also enable the stated claim limitation of coupling a cord to an interior of the container "***for inverting the container to serve as the anchor for housing weight***," which the accused device's exterior connection simply cannot do. *E.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").

Courts regularly and appropriately reject application of the doctrine of equivalents when the proposed construction reads out specific language of the claims. For example, where the patent claim required "a moveable end slidably mounted to" a seat base, and the accused product was found to be "rotatably mounted"—and therefore technically movable—but not "slidably mounted," the doctrine of equivalents could not save the patentee's infringement claim. *See Freedman Seating*, 420 F.3d at 1361. This difference was not a "subtle difference in degree," but rather "a clear, substantial difference or difference in kind." *Id.* (quoting *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998)). The Federal Circuit held that a construction effectively confining the moveable end to a fixed location would improperly read the "slidably mounted" limitation out of the claim. *Id.*; *see also Ethicon*, 149 F.3d at 1318 (rejecting application of the doctrine of equivalents where the claimed "lockout mechanism" of the accused device was not "connected to said longitudinal slots" as required by the claim, but instead located in an entirely different location away from the claimed slots).

8

The Federal Circuit likewise rejected application of the doctrine of equivalents in *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420 (Fed. Cir. 1997). There, the claims at issue, directed to a hypodermic needle disposal container, required among other things "an elongated slot at the top of the container body." *Id.* at 1422 (emphasis). The identified slot of the accused device, however, was located in the ***interior*** of the container, rather than at ***the top*** of the container. *Id.* at 1423. Noting the "relatively simple structure[e]" of the device, and the absence of any "later-developed technology" that would "obfuscate[] the significance of [the] limitation," the Federal Circuit rejected a doctrine of equivalents argument that would vitiate the "top of the container" limitation expressly recited in the claims. *Id.* at 1424-26.

In doing so, the Federal Circuit recognized that patentees who claim an invention narrowly give up doctrine of equivalence arguments even though the patentee might have been able to claim more broadly during prosecution. *Id.* at 1424-25 (quoting *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) ("The doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement'")). Indeed, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." *Id.* at 1425 (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108 (Fed.Cir.1996), *cert. denied,* 520 U.S. 1115 (1997)); *see also Freedman Seating*, 420 F.3d at 1362 ("Members of the public were therefore justified in relying on this specific language in assessing the bounds of the claim.").

Similarly here, the accused Beach Shade product's external cord connection point cannot be equated to the 330 Patent claim's requirement that the cord connect to "an ***interior*** of the container ***for inverting the container***" so as to avoid sand from disturbing the frame and canopy when stored inside the container. (*See* DE 1-7, 330 Patent claim 1 (emphasis added); *id.* at col 6,

9

lines 43-48.) As the Court expressly recognized, the Beach Shade "lacks this utility, in that the external connection point ***negates any need to invert the bag***." (Order at 18 (emphasis added).) But the Beach Shade's external connection point does not simply "negate[] a need" to invert the container bag, ***it precludes inversion entirely***. Accordingly, equating an external connection point with the claimed connection to "an interior of the container" reads out the claim's requirement of "inverting the container," and is therefore improper. *See Freedman Seating*, 420 F.3d at 1362, *Ethicon*, 149 F.3d at 1318; *Sage Prods.*, 126 F.3d at 1424.

 **B.** **Beach Shade lacks a cable extending through the plurality of longitudinally-extending sections.**

  In much the same way, express language of claim 1 of the 117 Patent is vitiated from the claim under the Court's doctrine of equivalents analysis. Claim 1 requires "a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section ***and any of the at least one intermediate longitudinally-extending sections arranged therebetween***." (DE 1-9, 117 Patent claim 1 (emphasis added).) Thus, the claim specifically requires not only that there be a cable extending through the longitudinally extending sections "from one end to the other," (Order at 20), but also extending through the separately claimed "intermediate longitudinally-extending sections." (*Id.*) This is consistent with the antecedent basis of "the plurality of sections" that is defined above in the first full paragraph of claim 1 as "***a plurality of longitudinally-extending sections*** arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are ***each directly engaged with the surface at first ends thereof***." (117 Patent, claim 1 (emphasis added).) The 117 Patent specification noted that this was important so as to provide "supporting tension to the end-to-end alignment of the supporting configuration." (*Id.* at col. 5, lines 38-46.) The 117 Patent also touts the benefits of

having fewer parts and fewer assembly steps (*i.e.*, one single frame vs. three portions that must be joined together). (*Id.* at col. 1, lines 27-29 ("Other systems are cumbersome to transport or assemble, due to the number of parts involved, steps required during setup . . . ."); DE 50, Hearing Tr. at 145 (discussing the disadvantages of having multiple parts relative to the claimed single frame connected with a continuous cable).) Properly construed, a ***cable*** must ***extend through the plurality of sections***, including any "intermediate longitudinally-extending section arranged therebetween," to meet the limitations of claim 1. *See Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 857 (Fed. Cir. 2014) ("a construction that excludes a preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support.").

As the Court recognized, the Beach Shade does not include a cord extending continuously from one end of the frame to the other, but instead has a cord in each of the left and right poles. (Order at 20 (discussing Beach Shade's "two-cable system").) As also recognized, the Beach Shade's left and right poles are joined by a center connector (*i.e.* an "intermediate longitudinally-extending section arranged therebetween") that does ***not*** include a cord. (*Id.* at 21 (acknowledging the air gap inside the intermediate connector).)

The Court's limited doctrine of equivalents analysis stops short of what is required under the "all elements rule," and reads out plain language included in the claim. (Order at 20-21.) Like the "slideably movable" limitation in *Freedman Seating*, and the "top of the container" limitation in *Sage Products*, equating Beach Shade's separate pole systems with their independent cables, ***which do not extend through the separate center connecting piece of the frame***, reads out the express limitation in claim 1 that the cable extend not only "from the first end of the first [section] to the first end of the second [section]," but also through "any of the at least one intermediate longitudinally-extending sections arranged therebetween." *See, e.g.*, *Freedman Seating*, 420 F.3d

at 1362 ("This is the precise type of overextension of the doctrine of equivalents that the claim vitiation doctrine is intended to prevent."); *Sage Prods.*, 126 F.3d at 1421 ("A skilled patent drafter would foresee the limiting potential of the 'over the slot' limitation. . . . [A[s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure."); *Novartis Pharm. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1338-39 (Fed. Cir. 2004) ("Permitting such an element in the accused product to come within the bounds of the claimed element would impermissibly extend the scope of the claim language beyond what the patentee actually claimed.").

Put another way, it is not enough to say that the two-cable system of Beach Shade "is equivalent" to "'a cable extending through the plurality of longitudinally-extending sections of the frame' from one end to another" (which Beach Shade is not). (Order at 20.) It must also be equivalent to the stated limitation requiring the cable to extend through "any of the [sections] arranged therebetween." (DE 1-9, 117 Patent claim 1.) The Beach Shade cable does not do so, and therefore cannot be equivalent to the claimed system. *See Warner-Jenkinson*, 520 U.S. at 29 ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.").

## C. Beach Shade was entitled to rely on these express limitations in designing around the Asserted Patents.

It is important to also consider that Beach Shade relied on these express claim limitations in designing around the patented product. Because patents are public documents intended to put the world on notice of the elements of the invention, and how they may be designed around, the all elements rule necessarily serves as a limitation on the application of the doctrine of equivalents. *See, e.g.*, *Sage Prods.*, 126 F.3d at 1425 ("Because th[e] issued patent contains clear structural

12

limitations, the public has a right to rely on those limits in conducting its business activities."); *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) ("The analysis may also take account of the policy that legitimate design-around efforts should always be encouraged as a path to spur further innovation"); *State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("One of the benefits of a patent system is the so-called 'negative incentive' to 'design around' a competitor's products"). To hold otherwise would be to frustrate the important "definitional and public-notice functions of the statutory claiming requirement." *Warner–Jenkinson*, 520 U.S. at 29. Where a patent claim recites a specific function for an element of the claim and the written description reiterates the importance of that particular function, a patentee may not later argue, during the course of litigation, that an accused device lacking that functionality is equivalent. *See, e.g.*, *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 938 (Fed. Cir. 1987) ("Having secured claims only by including very specific functional limitations, Pennwalt now seeks to avoid those very limitations under the doctrine of equivalents. This it cannot do.").

The doctrine of equivalents cannot save Shibumi from the fact that Beach Shade effectively designed around Shibumi's patents. The elements at issue are not equivalent to the required limitations of the claims, and to find them equivalent requires reading out substantial language from the claim in violation of the all elements rule. Because there is no literal infringement (Order at 15), and because equivalents of the missing elements are not present in the accused Beach Shade device, there can be no infringement and no likelihood of success on the merits.

## III.     The Court Incorrectly Found Shibumi Would Suffer Irreparable Harm.

The Court further erred because Shibumi did not make "a clear showing of irreparable harm," which was "actual and imminent," and not compensable by monetary damages. *Direx Israel*, 952 F.2d at 812. Even if a likelihood of infringement under the doctrine of equivalents could be properly found, and it could not, Shibumi had to meet the high burden to show its harm

13

was irreparable. Injunctive relief "does not follow from success on the merits as a matter of course." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (quotation omitted). Rather, it is "a drastic and extraordinary remedy" that should be used only when "essential in order effectually to protect property rights against injuries otherwise irremediable." *Id*. At best, Shibumi established that it will have a claim for damages compensable by monetary relief, making an injunction improper. *Id.*

Where, as here, the issuance of "a preliminary injunction [was] based only on a possibility of irreparable harm [it] is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

## A. The Harm Shibumi Allegedly Suffered is Compensable and Does Not Constitute Irreparable Harm.

The Court correctly recited but then sidestepped the well-established rule that harm which can be remedied by monetary relief does not constitute irreparable harm. (Order at 29.) Here, Shibumi's claims for patent (and trade dress) infringement seek damages that can equate to lost profits, a reasonable royalty and/or disgorgement of Beach Shade's sales. (DE 1, Complaint at 24 (Prayer for Relief).) The fact that Shibumi can be made whole by its claim for damages should have weighed heavily against the injunction in this case. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *see also Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by

14

an award of money damages at judgment, courts generally have refused to find that harm irreparable.").

Similar to virtually every other patent infringement case, Shibumi here has alleged and will have an opportunity to prove damages based on the loss of sales and customers. If such harm was irreparable, however, "irreparable harm would be found in every case involving a 'manufacturer/patentee, regardless of circumstances.'" *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 302-03 (Fed. Cir. 2009) (citing *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)). "Lost sales (without more) are presumed to be compensable through damages." *Id*. Therefore, the fact that Shibumi and Beach Shade compete, and Shibumi has alleged that it has lost sales is insufficient to find irreparable harm. *Id.* Shibumi did not establish both that it was subject to harm and that such harm could not be compensated by monetary damages.

> **B.    Shibumi Failed to Provide <u>Evidence</u> of Lost Sales, Market Share and Customers.**

Certain categories of loss if proven with competent evidence can allow for irreparable harm, including loss of market share, price erosion and loss of goodwill. But merely claiming those losses is insufficient, as they must be shown with sufficient evidence to carry the movant's high burden. *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) (granting preliminary injunctions based on speculative loss of market share would result in injunctions "in every patent case where the patentee practices the invention."); *Pergo, Inc. v. Faus Grp., Inc*., 401 F. Supp. 2d 515, 527 (E.D.N.C. 2005). In sum, "[a] mere possibility of irreparable harm is not enough." *Pro-Concepts, LLC v. Resh*, No. 2:12-cv-573, 2013 WL 5741542, at *21 (E.D. Va. Oct. 22, 2013); *accord S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist*., 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."); *Spacemax Int'l, LLC v. Core*

*Health & Fitness, LLC*, No. 2:13-4015, 2013 WL 5817168, at *2 (D. N.J. Oct. 28, 2013) ("However, the loss of customer goodwill is often calculable and compensable, and its mere pleading does not necessitate injunctive relief.").

      **1.** ***The Evidence that the Court relied on regarding loss of market share, price erosion and loss of reputation was speculative and inadmissible.***

In terms of market share, Shibumi put forward only evidence from its own self-interested principal and a few customer reviews that the Court found showed a permanent loss of market share and customers. They do not.

First, Mr. Barnes's conclusory testimony in his affidavit is not evidence (*e.g.*, DE 5, Barnes First Decl. at ¶¶ 23-24 ("Shibumi Shade has certainly already lost sales and market share to Beach Shade" that "*could* seriously harm Shibumi Shade's reputation and customer goodwill in the marketplace."); ¶ 25 ("Shibumi risks losing its reputation ….").) While he repeats <u>the words</u> that trigger consideration of irreparable harm (erosion, goodwill, lost customers), Mr. Barnes could not provide <u>evidence</u> to sustain these claims. Indeed, when the Court asked Mr. Barnes several time to provide such evidence and detail his loss and market share, he refused or was unable. *See* Hearing Tr. at 74-75:

> Q: During the time when Beach Shade was selling products, did Shibumi sell 900 fewer products that it had projected to sell during that timeframe.
>
> A: Again its incalculable
>
> COURT: Why is that incalculable? That's a pretty straightforward question. Did Shibumi Shade sell 900 fewer products that it had projected to sell during that timeframe?
>
> A: I don't recall what exactly our projections were

This same line of inquiry was part of the sealed part of the hearing where, even with sufficient protections in place to ensure confidentiality, Mr. Barnes could not respond to counsel or the Court's questions and detail his projections, lost sales, lost customers or market share from Beach

16

Shade.[5] (DE 51, Sealed Hearing Tr. at 55-59 (declining to testify regarding Shibumi's sales projections, and how Beach Shade's sales may (if at all) impacted Shibumi, and admitting such analysis was not performed).) Indeed, counsel for Shibumi acknowledged on the record that Shibumi had not tried to calculate a loss of market share. (*Id*. at 57 ("He's never attempted to make out a case that there was a specific projection that has fallen short or a percentage that they have lost of market share at this point.").)

Shibumi's failure to even try to define the market and its loss left the Court with nothing but conjecture on this point.[6] Indeed it is much more probable that Shibumi's market share and sales increased during the period of time Beach Shade was selling its product. Regardless, claiming in conclusory fashion that a movant's losses were "incalculable" does not mean they were— Shibumi could have shown their 2021 projections and estimated market share, but did not. *Automated Merch.*, 357 F. App'x at 300-01 ("lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction"); *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("[W]e question whether [the movant's] alleged injuries, *i.e.*, 'a loss of customers or customer goodwill,' . . . are truly 'irreparable' in the sense that they could not be addressed through money damages if [movant] is successful following a trial on the merits." (citations omitted)). Shibumi's speculation as to its market share and losses falls short of its high burden warranting the extraordinary relief awarded.

---

[5] Counsel for the parties conferred and counsel for Shibumi has confirmed that nothing in the sealed portion of the hearing transcript is confidential and that Shibumi will not move to redact any portions of the transcript.

[6] In his closing argument, counsel for Shibumi essentially acknowledged that Shibumi could not establish any loss of sales or market share. (Hearing Tr. at 126 ("There was some questioning of Mr. Barnes and whether he could calculate or say what sales have been lost … it's hard to prove a negative and whether someone would have bought or not. But the other is we have experienced this exponential growth … and its very hard to say what you would have achieved.").)

17

Absent from this testimony is any evidence as to: how much market share Shibumi has of the beach shade market; how much market share Beach Shade has or allegedly will take during the applicable period; and how much market share is taken up by other products. (Hearing Tr. at 10-12 (Barnes testifying about "lots" of other beach shade products such as tents, umbrellas); DE 29, Barnes Second Decl. at ¶¶ 2-10 (listing tents, canopies, pop up shades and a dozen other beach shade products).)

### 2. There was an insufficient connection between the alleged infringement and alleged lost sales and no consideration of other factors.

Contrary to the Court's finding, Shibumi also did not establish the causal connection between the alleged infringement and alleged harm to establish that it was irreparable in nature. While Shibumi was not required to show that the allegedly infringing features were the sole basis for consumer demand, it had to establish some connection and address other potential factors. *Apple, Inc. v. Samsung Electronics Co.* (Apple IV), 809 F.3d 633, 640 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2522 (2016) (requiring "a causal nexus linking the harm and the infringing acts" to ensure that "an injunction is not entered on account of 'irreparable harm caused by otherwise lawful competition'") (citations omitted).

In fact there was no testimony that consumers purchased Beach Shade's product because of the allegedly infringing patented feature and no accounting for the variety of other reasons why customers did not purchase a Shibumi product. The customer reviews exhibit reluctance to purchase the Shibumi shade because, for example, of its high price ($250). (*E.g.*, Hearing Tr. at 62-63 (customer review discussing high price).) In sum, Shibumi's product at $250 is much more expensive than other products including Beach Shade's product and there was no evidence as to why—*e.g.* whether that was based on Shibumi's U.S. manufacturing or its profit margin. When confronted with this fact, Mr. Barnes could not say whether any of the customers who raised the

18

price issue would have ultimately purchased a Shibumi product. (*Id.*) There simply was no evidence connecting price differential to the alleged infringement.[7]

Further, there is no showing that such customers never would have been a Shibumi customer because of the high cost of its shade. Thus, contrary to this Court's finding, this is a case where Shibumi could not credibly tie the alleged harm to the alleged infringement. As such, there was insufficient evidence to prove irreparable harm. *See Apple Inc. v. Samsung Elecs. Co*., 678 F.3d 1314, 1324 (Fed. Cir. 2012) (Apple 1) (noting movant's conclusory statements and theories, finding: "Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product."); *Voda v. Cordis Corp*., 536 F.3d 1311, 1329 (Fed. Cir. 2008) (explaining that "the district court did not clearly err in finding that [the plaintiff] failed to show that [defendant's] infringement caused him irreparable injury").

### 3. The Customer reviews are hearsay and do not show a permanent loss of customers.

Next, the Court inappropriately credited the seasonal nature of the products and the unauthenticated hearsay of customer reviews to find Shibumi suffered a loss of goodwill and would permanently lose customers. (Order at 30 (citing Customer Reviews (DE 5-7 at 3 showing only sale of Beach Shade products)); DE 5-8 (showing positive review and purchase of Beach Shade product).) At best, such evidence shows lost sales and nothing more. In reality these comments are unreliable hearsay that should not have been credited.

---

[7] In conclusory fashion, Mr. Barnes assumes that the price differential is due to the infringement. But manufacturing in China is not evidence tied to the infringement. (Hearing Tr. at 33 ("Making them in China, selling them on Amazon for $75 to $100 less for the same thing, of course we feel the price pressure.").)

At the hearing, the Court properly understood the inadmissibility of customer reviews, granting (at least initially) Beach Shade's objection to introduction of that evidence. (Hearing Tr. at 30.) Nevertheless, the Court later considered and substantiated its ruling of irreparable harm on this same evidence. (Order at 31 ("Based on the foregoing evidence [from customers] … irreparable injury is likely in absence of the sought injunctive relief." (citing Customer Correspondence, comments and reviews at DE 5-8, 5-9, 5-10, 5-14, 15-2, 15-7, and 15-8).) The only way that Shibumi could have convinced the Court of irreparable harm is if these out of court statements were offered for the truth of the matter asserted. It was improper to consider such hearsay. Fed. R. Evid. 801; *see also, e.g.*, *Marine Indus. Const., LLC v. United States*, 151 Fed. Cl. 349, 365-66 (2020) (collecting cases and rejecting declarations containing hearsay); *Earhart v. Countrywide Bank, FSB*, No. 3:08-cv-238, 2009 WL 2998055, at *3 (W.D.N.C. Sept. 15, 2009) (finding hearsay statements inadmissible where the plaintiff failed to show how the statements were more probative than other witnesses, lacked the circumstantial guarantees of trustworthiness and because the statements were made by unidentified declarants); *Boddicker v. Am. Honda Motor Co.*, No. 10-1018, 2011 WL 6132099, at *4 (N.D. Iowa Dec. 8, 2011) (excluding records of customer reviews).

Further, there should have been a serious question in the Court's mind as to Shibumi's third-party evidence and whether such reviews were accurate and legitimate. The Court itself was concerned about the declarations Shibumi solicited and wrote for third party partners that were provided manufactured examples and information as to Beach Shade's product that was no longer for sale at the time of the declaration. (Hearing Tr. at 75 (Court expressly reservation about customer declarations); *id*. 65-75).) *See also ADT LLC v. Alarm Protection LLC*, No. 9:15-cv-80073, 2017 WL 1881957, at *2 (S.D. Fla. 2017) ("The customer, as an unattached agent, is not

20

afforded the same presumption of trustworthiness an employee is afforded under the Federal Rules.").

None of the reviews state that a customer would never buy from Shibumi or that Shibumi's reputation suffered because of anything tied to the infringement. If Beach Shade sells for less and Shibumi prevails, it can make up the difference in monetary damages. The Court appears to have not sufficiently considered that Shibumi's theory, that the Beach Shade product was an inferior product made from inferior materials, would not show a permanent loss of customers. Rather the opposite would be true. If Beach Shade's product was inferior it would hurt Beach Shade's reputation and drive customers to Shibumi, not permanently away from them. Again, the Court was left with speculation as to price erosion, loss of goodwill and customers—speculation that has led this Court and sister courts to deny motions for a preliminary injunction. *See, e.g.*, *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC,* 708 F. Supp. 2d 527, 532 (D. Md. 2010) (stating that "mere speculation about possible market share losses is insufficient evidence of irreparable harm."); *Southtech Orthopedics, Inc. v. Dingus,* 428 F. Supp. 2d 410, 418 (E.D.N.C. 2006) (purely economic injury, such as that resulting from lost sales, profits, or market share does not equate to irreparable harm sufficient garner the need for injunctive relief); *Z–Man Fishing Prod., Inc. v. Renosky,* 790 F. Supp. 2d 418, 423 (D.S.C. 2011) (no proof of irreparable harm where party failed to establish "any evidence of lost goodwill, loss of market share, or price erosion."); *Nutrition & Fitness, Inc. v. Progressive Emu, Inc.*, No. 5:12-cv-192-F, 2012 WL 1478734, at *2 (E.D.N.C. Apr. 27, 2012) (stating that "the court is unpersuaded by [plaintiff's] claim that its potential loss in market share warrants the need for injunctive relief." and finding the contention that plaintiff would not be able to meet customer demand "is too speculative, to constitute irreparable harm").

Thus, contrary to the Court's finding, this case is analogous to its proper ruling in *Edge-Works Mfg. Co. v. HSG, LLC* because the inadmissible, unreliable and deficient customer information added nothing to the "unsupported assertions" by Shibumi as to its lost sales, market share and customers. 285 F. Supp. 3d 883, 900 (E.D.N.C. 2018) (evidence of harm from consumer comments insufficient to show irreparable harm); *Nutrition 21*, 930 F.2d at 871-72 ("[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial.").

### IV. In Balancing the Equities the Court Discounted the Irreparable and Certain Harm to Beach Shade.

Given the deficiency of evidence to support a finding of irreparable harm, it was also error for the Court to conclude the balance of harm favors Shibumi. It does not. If it prevails in the case, Shibumi may achieve damages it allegedly has suffered from the sale of Beach Shade products. *Hughes Network*, 17 F.3d at 694. Conversely, the injunction will destroy Beach Shade such that neither it nor any damages would survive.

The Court presumed that as an infringer, the harm to Beach Shade was its own making and not distinct from other defendants. (Order at 32.) But that is incorrect and improper. First, any finding that an accused infringer cannot complain about an improper injunction would read the balance of hardships element out of the *Winter* analysis. (*Id.* (citing *Lego A/S v. Zuru Inc*., 799 F. App'x 823, 832 (Fed. Cir. 2020)).) The Supreme Court has "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows" success on the merits. *eBay*, 547 U.S. at 392–93. Instead, the "familiar principles" of equity "apply with equal force to disputes arising" from claims of infringement. *Id*. at 391–92; *accord Bianco v. Globus Med., Inc*., Case No. 2:12-cv-147, 2014 WL 1049067, at *10 n.6 (E.D. Tex. Mar. 17, 2014)

("To ignore the harm to the infringer because 'it cannot be heard to complain' runs contrary to eBay's mandate to 'consider[ ] the balance of hardships between the plaintiff and defendant.'") (quoting *Hynix Semiconductor Inc. v. Rambus, Inc*., 609 F. Supp. 2d 951, 970 (N.D. Cal. 2009)).

Second, courts are reluctant to grant injunctive relief if the defendant's business could not survive. *See Wilson-Cook Med., Inc. v. Wiltek Med., Inc*., No. 90-2911, 1991 WL 27150, at *2 (4th Cir. Mar. 6, 1991) (per curiam) (affirming denial of an injunction where preliminary relief would have a "death penalty effect" on defendant); *F.T.C. v. Verity Int'l, Ltd*., 124 F. Supp. 2d 193, 204 (S.D.N.Y. 2000) (noting that courts should be reluctant "to impose what might be a commercial death sentence at an interlocutory stage if there is some reasonable alternative"); *Hynix Semiconductor*, 609 F. Supp. 2d at 984-85 (concluding balance of harms weighed against granting injunction where "injunction would decimate [defendant's] business"); *Pfizer, Inc. v. Astra Pharm. Products, Inc*., No. 92 CIV.752 (KC), 1992 WL 685742, *3 (S.D.N.Y. Feb. 20, 1992) (finding balance of hardships weighed in favor of defendant where impact of injunction would be "ruinous"). Such is the case here. There is no question that Beach Shade sells only one product that it is now prohibited from selling. (Order at 32; Finneran Decl. at ¶¶ 8-9). If the injunction is sustained, Beach Shade will be out of business in the U.S. and its reputation among U.S. customers would be destroyed such that it may never be able to resume sales.

Thus, it is of no moment that Beach Shade is new to the market and recently sold its inventory, as the inability to sell its one product will likely prevent it from defending this matter or for damages to be available after a trial. *SAS Inst.*, 874 F.3d at 387 (the injunction awarded would have "a significant negative financial impact on [defendant's] sales. The injunction therefore would frustrate, rather than facilitate, defendant's ability to pay damages."). That defeats rather than supports a claim for injunctive relief as Shibumi cannot simultaneously argue that it

23

can put Beach Shade out of business and that Beach Shade's insolvency supports the injunction. The result is a permanent injunction that should have been disallowed. *See id.* (vacating a preliminary injunction).

Accordingly, where, as here a plaintiff's harm is speculative and defendant's is certain, the balance of equities favors the Defendant Beach Shade. *Illinois Tool Works v. Grip-Pak, Inc.*, 906 F.2d 679, 683–84 (Fed. Cir. 1990); *Visto Corp. v. Sproquit Techs., Inc.*, 413 F. Supp. 2d 1073, 1093 (N.D. Cal. 2006) (harms to the plaintiff "appear[ed] more theoretical or potential than actual or proven," while the parties did not dispute that an injunction "would devastate [the defendant's] business.").[8]

Finally, the public interest is in competition and lower prices to consumers, thus it is harmed if the injunction is sustained and Beach Shade is eliminated from the marketplace. *See, e.g.*, *Otsuka Pharm Co., Ltd. v. Torrent pharm. Ltd., Inc.*, 99 F. Supp. 3d 461, 507 (D. N.J. 2015) (public interest favors competition).

## V.    The Court Miscalculated Beach Shade's Sales, Ignored Beach Shade's Costs, and Therefore Set an Insufficient Bond.

When granting a preliminary injunction, a district court must set a bond "in an amount that the court considers proper to pay *the costs and damages* sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis); *Rauch Indus., Inc. v. Radko*,

---

[8] The Court also erred in finding that the status quo in this matter was prior to Beach Shade's sales of allegedly infringing products. Rather, the status quo was that two competitors were selling to the market with a dispute only arising after such sales were made and Shibumi claimed infringement. *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) ("We have defined the status quo for this purpose to be 'the last uncontested status between the parties which preceded the controversy.'" (quoting *Taylor v. Freeman*, 34 F.3d 266, 320 (4th Cir. 1994))). The ordered injunction was thus mandatory and should have met an even higher standard. *Microsoft Corp. Antitrust Litig.*, 333 F.3d at 524 (citations omitted) ("Mandatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances").

24

No. 3:07-cv-197C, 2007 WL 3124647, at *8 (W.D.N.C. Oct. 25, 2007) ("The purpose of the bond is to provide security **for any damages** resulting from an improvidently granted injunction." (emphasis)). The district court has discretion in fixing the amount of a bond, but must be mindful that "an understated bond could cause irreparable harm on the ground that 'the damages for an erroneous preliminary injunction cannot exceed the amount of the bond.'" *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 466 (M.D.N.C. 2015) (quoting *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000)). "The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999).

In view of this potential for irreparable harm stemming from an improperly set bond amount, parties may move for adjustment of the bond amount at any time while the preliminary injunction is still in effect. *See Lab Corp.*, 84 F. Supp. 3d at 466 (citing *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989)); *see also* 13 Moore's Federal Practice—Civil § 65.50 ("A party may move the court to increase or decrease the amount of security so long as the restraint or injunction is in effect."). In fact, the Fourth Circuit has encouraged courts to reevaluate the amount of a bond so as to "avoid[] unnecessary expenditure of appellate resources." *George Sink PA Injury Lawyers v. George Sink II Law Firm LLC*, No. 2:19-cv-01206, 2019 WL 6318778, at *4 (D. S.C. Nov. 26, 2019) (correcting bond amount during pendency of appeal) (citing *Dixon v. Edwards*, 290 F.3d 699, 720 n.14 (4th Cir. 2002)).

Further, not only is it appropriate to reevaluate the amount of the bond required, but it is appropriate to consider new evidence when doing so. *See, e.g.*, *Fleet Feet, Inc. v. Nike Inc.*, 419 F. Supp. 3d 919, 949 (M.D.N.C. 2019) ("Should Nike wish to seek a higher amount [for bond], it may file a motion to increase the security, accompanied by additional evidentiary support.");

*Jenkinson v. Highmark W. Va., Inc.*, No. 3:19-cv-83, 2019 WL 2341668, at *8 (N.D. W. Va. June 3, 2019) ("Due to lack of argument, the parties are GRANTED leave to file additional evidence with the Court regarding the proper bond amount."). Accordingly, the Court may consider the additional facts provided herewith in evaluating whether the bond should be increased.

Under the circumstances of a preliminary injunction, where there is an incomplete record considered on an expedited basis, courts must ensure that the movant is not unjustly enriched, particularly when an injunction may be awarded on the "mere probability of success on the merits." *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982). In setting a bond, it is important to account for ***any costs and damages*** resulting from an improvidently granted injunction. Fed. R. Civ. P. 65(c); *S & D Land Clearing v. D'Elegance Mgmt. Ltd.*, 34 F. App'x 884, 895 (4th Cir. 2002). In setting the $60,000 bond, the Court erred by (1) disregarding Beach Shade's sales projections for 2021-2022; (2) assuming and applying an improper 10% profit margin that finds no support in the record; (3) arriving at a $600,000 sales number without support and based on an overly conservative timeline involving a complex IP case, and (4) limiting the bond to Beach Shade's projected lost profits. (Order at 36.)

In only its first 28-days of business, Beach Shade's revenues were ███████████████. (Ex. B, Second Finneran Decl. ¶ 2.) That number was projected to grow significantly during the summer of 2021 and into 2022. (*Id.* ¶¶ 3-4.) Further, while sales were projected at ██████████ during the *remainder of the year* in 2021 (four months), (*id.* ¶ 3), sales were actually projected to be closer to ███████ through the 2022 summer season (*id.* ¶ 4), and up to ███████████ through the 2023 beach season. (*Id.* ¶ 5.) And most critically, Beach Shade's net profit margin is actually ████████████████, not the 10% the Court assumed. (*Id.* ¶ 6.)

Further, the ruling on the preliminary injunction was on February 8, 2022, some eight months after the hearing, which delayed initiation of the case. Indeed, the parties have not yet submitted a Rule 26(f) plan and discovery schedule. (*See* DE 48 (setting March 29, 2022 deadline for submission of Rule 26(f) Report).) If sustained, that will allow Shibumi an injunction of not just one year, as assumed in the Order, but effectively two years or more. Accordingly, if the injunction remains in place, it would preclude Beach Shade's sales not only for 2022 but likely also through at least the 2023 summer beach season. Based on its growth projections, Beach Shade estimates that it will lose ███████████ in sales through summer 2023, which at a ███████████████████████████.

Finally, a bond is not just limited to lost profits, but also any costs and damages the wrongfully enjoined party incurs. Fed. R. Civ. P. 65(c) (Court may not "issue" preliminary relief unless the movant "gives security in an amount that the court considers proper to pay the ***costs and damages*** sustained by any party found to have been wrongfully enjoined or restrained." (emphasis)); *Edgar*, 457 U.S. at 649; *Hoechst Diafoil Co.*, 174 F.3d at 421 (holding that bond should cover "the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained" (quoting 11A Charles Alan Wright et al., Federal Practice & Procedure § 2954, at 292 (2d ed.1995))). Such recovery may include the costs to maintain the business without the revenues enjoined, and other such damages. *See id.*; *Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 243 (2010) ("In addition, Defendant estimated that administrative costs to GSA would likely range from $5,000 to $10,000. The Court is persuaded that there could be standby costs and administrative costs resulting from the order.")

27

Given these facts, the bond should have been set as ███████████████████████

███. *See Lab. Corp.*, 84 F. Supp. 3d at 466.

## <u>CONCLUSION</u>

The district court relied on incorrect legal conclusions and findings of fact in awarding the preliminary injunction. *Huskey v. Ethicon, Inc*., 848 F.3d 151, 158 (4th Cir. 2017). For the multiple reasons cited herein, the Court should reconsider and overturn the injunction awarded, or alternatively modify the bond.

Dated: March 22, 2022

Respectfully Submitted,

**WILLIAMS MULLEN**

By: */s/ Richard T. Matthews*
    Richard T. Matthews
    N.C. Bar. #32817
    Robert C. Van Arnam
    N.C. Bar # 28838
    Andrew R. Shores
    N.C. Bar # 46600
    P.O. Drawer 1000
    Raleigh, NC 27602-1000
    Telephone: (919) 981-4000
    Fax:  (919) 981-4300
    rmatthews@williamsmullen.com
    rvanarnam@williamsmullen.com
    ashores@williamsmullen.com

    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of electronic filing to all counsel of record.

**WILLIAMS MULLEN**

By: */s/ Richard T. Matthews*
    Richard T. Matthews
    N.C. Bar. #32817
    P.O. Drawer 1000
    Raleigh, NC 27602-1000
    Telephone: (919) 981-4000
    Fax:  (919) 981-4300
    rmatthews@williamsmullen.com
    rvanarnam@williamsmullen.com
    ashores@williamsmullen.com

    *Attorneys for Defendants*